IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 13 |
| ERIC T. MILLER, ) | |
| DEBTOR, ) | CASE NO.: 13-76000-MHM |
| ) | |
| ) | |

**DEBTORS' BRIEF IN SUPPORT OF MOTION TO RECONSIDER AND
VACATE ORDER OF DISMISSAL**

Comes Now, Debtor, Eric T. Miller, and shows this Honorable Court that on November 26, 2014, Debtor filed a "Motion to Reconsider and Vacate Order of Dismissal" ("Motion to Vacate") (Doc. No. 76). On December 12, 2014, Oakmont Holdings, LLC ("Oakmont") filed a "Response to Motion to Reconsider and Vacate Order of Dismissal" ("Response") (Doc. No. 78). The matter came on for hearing on January 29, 2015, at which time the Court permitted the parties to submit briefs on the issues raised. Accordingly, Debtor shows the following:

.

**STATEMENT OF FACTS**

Eric Miller filed the present case under Chapter 13 on December 2, 2013. On September 19, 2014, the Court confirmed the Chapter 13 Plan. The Plan provided for payment and redemption of a real property tax deed held by Oakmont on real property known as 3606 Bouldercrest Rd., Ellenwood, GA ("Property") as follows:

**Tax deeds- Redemption of Real Property:** This provision applies to the following creditors: **Oakmont Holdings, LLC**  The Plan proposes to redeem the real property listed below which is in the possession of the Debtor subject to tax deeds held by **Oakmont Holdings, LLC.**.  Debtor shall redeem the property by paying the debt in full through the Chapter 13 Plan as shown below.  **Upon**

**completion of the Chapter 13 Plan and Discharge of the Debtor, the tax deeds held by these lenders shall be null, void and of no effect with the real property having been redeemed with title vesting in Debtor and the non-filing co-owner.** This claims will be paid as follows:

**1. Oakmont Holdings, LLC**

| | | |
|---|---|---|
| (a) | Collateral- | 3606 Bouldercrest Rd., Ellenwood, GA 30294 |
| (b) | Estimated Total Claim- | $11,610.00 (which includes premiums pursuant to OCGA 48-4-42 and costs). |
| (c) | Property Value | $42,000.00 |
| (d) | Interest Rate | N/A |
| (e) | Estimated Monthly Payment | $106.00; step to $411.00 on 12/02/15; step to $479.00 on 5/2/17. |

The property's tax value has since increased to $62,000.00 according to the DeKalb County Tax Assessor. Oakmont's current payoff is approximately $8,890.00. Thus, there is $53,110.00 in equity in this property. Prior to confirmation, Oakmont filed an Objection to Confirmation (Doc. No. 10); a Motion for Order that No Stay is in Effect (Doc. No. 11), and a Corrective Motion for Order that No Stay is in Effect (Doc. 26) (collectively "Stay Motions"). These Stay Motions came before the Court for hearing on February 18, 2014. The Court flatly denied the Stay Motions from the bench relying on *Francis v. Scorpion Group, LLC*, 489 B.R. 262 (Bankr. N.D. Ga., 2013) for the proposition that a Debtor "redeem" a tax deed by making payments under the Chapter 13 plan utilizing 11 U.S.C. Sec. 1322. Oakmont unsuccessfully argued that Debtor only had a bare right of redemption under state law which could only be exercised with a lump sum redemption inder 11 U.S.C. Sec. 108.

After denial of the Stay Motions, Oakmont lost interest in the case and did

-2-

not pursue its Objection to Confirmation. After the Court confirmed the Plan, the case proceeded until it was dismissed on November 20, 2014 (Doc. 74) ("Dismissal"). The Court dismissed the case upon the Trustee's Supplemental Report dated November 19, 2014 (Doc. No. 73). Mr. Miller was $407.00 delinquent on his plan payments at the time of the Dismissal. Plan payments are now current through January 2015.

Since the Dismissal, the relationship of the parties has not changed. Oakmont still has a tax deed and Mr. Miller is still in possession of the property. Mr. Miller is seeking to sell the property and has received two written offers after listing the property with a real estate broker. A sale of the property would pay off the balance of the Chapter 13 case. Mr. Miller now seeks to vacate the Dismissal and resume the Chapter 13 case. Oakmont opposes the Motion to Vacate raising issues which the Court rejected last year.

## ARGUMENT AND CITATION OF AUTHORITY

**I.   What is the effect of an order vacating dismissal on a confirmed Chapter 13 plan which provides for redemption of a tax deed.**

Orders vacating dismissal are a frequent occurrence in the Northern District of Georgia. Despite this, the undersigned is not aware of any case in our district which discusses the effect of vacating a dismissal on the Chapter 13 plan. The Bankruptcy Code has a provision on the effect of a dismissal (11 U.S.C. 349). However, the Code is silent on the effect of vacating the dismissal. One Court has addressed the effect of vacating an order of dismissal. In *Allen v.*

*Philadelphia Electric Company,* 69 B.R. 867 (Bankr. E.D. Pa., 1987), the Court declared:

> However, we believe that the Order of August 12, 1986, which expressly "vacated" the Dismissal Order of May 20, 1986, had the effect of rendering the May 20th Order utterly and entirely void. Oddly enough, given its overly-abundant use in this Court, we could not locate any authority addressing the legal effect of the "vacating" of a prior order of dismissal. We were therefore forced to turn to BLACK'S LAW DICTIONARY 1388 (5th ed. 1979), which defines "vacate" as "To annul; to set aside; to cancel or rescind. To render an act void; as, to vacate an entry of record, or a judgment." Therefore, at least in circumstances where the Debtor is not estopped because of a change of position by another party to its detriment in reliance of the dismissal, we are inclined to treat the "vacated" dismissal order as if it were totally null and void and never existed. *Id.* at 872.

At the hearing on January 29, 2015, Oakmont did not argue or otherwise show that it had acted to its detriment in reliance on the dismissal. In fact, the interests of Oakmont and Mr. Miller in the real estate subject to the tax deed are unchanged since the time of the dismissal. Mr. Miller still has equitable rights to the property including use and possession, while Oakmont still has bare legal title. See *Francis v. Scorpion Group, LLC*, 489 B.R. 262, 266 (Bankr. N.D. Ga., 2013). Oakmont recently filed a quiet title action last month. Mr. Miller has not been served with the quiet title action and no final order in that case has been entered. Since Okamont has not had a change of position to its detriment since dismissal, Mr. Miller should be permitted to have the dismissal vacated.

**II.     Whether vacating the dismissal is prevented by the expiration of the time period for redemption of property ("barment period") subject to a tax deed, when said barment period expired prior to plan confirmation, but after the filing of the Chapter 13 plan.**

-4-

When a tax deed is issued in Georgia, "…the defendant in fi. fa. or any person having any right, title, or interest in or lien upon such property may redeem the property from sale by payment of the redemption price or the amount required for redemption…" O.C.G.A. 48-4-40.  The right of redemption can only be terminated by foreclosure or by adverse possession over a four year period (title by prescription).  See O.C.G.A. 48-4-45 and 48-4-48.  Any person or entity having "…any right, title, or interest…" in the property has a 12 month period after issuance of the tax deed to redeem the property. O.C.G.A. 48-4-40.  Once the 12 month period  expires, the tax deed holder can institute foreclosure by serving a "barment notice" on the taxpayer (defendant in fi. Fa.) and other parties entitled to notice. O.C.G.A. 48-4-45.

Oakmont served a barment notice which set a deadline of "…December 6, 2013 or 45 days after legal service of the Notice…" to redeem the property.  Mr. Miller filed his bankruptcy petition, plan and schedules on December 2, 2013, four days prior to the expiration of the barment period.  At the hearing on the Stay Motions on February 18, 2014, Oakmont argued that Mr. Miller's could only redeem the property under state law utilizing 11 U.S.C. Sec. 108.  Relying on *Francis*, Mr. Miller countered that 11 U.S.C. 1322 permitted a redemption under a Chapter 13 plan filed before the expiration of the barment period.  The Court rejected Oakmont's argument while reminding Oakmont of the supremacy clause of the Constitution.  The Court later confirmed the plan on September 19, 2019.

At the Motion to Vacate hearing on January 29, 2015, Oakmont argued

-5-

that the automatic stay suspended the running of the barment period until dismissal on on November 20, 2014.  Oakmont further argued that after dismisaal, the final four days of the barment period resumed and expired.  Thus, concludes Oakmont, the Debtor can no longer redeem the property.  If Oakmont's analysis is correct, it actually aids Debtors in future cases.  A Debtor could simply file a new case if time is left in the barment period suspended by the automatic stay.  However, *Francis* links the ability to redeeem under the plan to successful completion of the plan.  Thus, Mr. Miller could not just file a new case.  The dismissal must be vacated for the redemption under the plan to be successful.

An analysis of *Francis* as well the cases cited by Oakmont shows that the automatic stay does not suspend the running of the barment period.  So how can a Debtor redeem propery if the barment period continues to run post-petition?  The only way to redeem in that circumstance is to file the **plan**, not just a petition, before the barment period expires.  Judge Hagenau explained it as follows:

> Scorpion urges that the only right the Debtor had was to tender the redemption price in a lump payment within the original redemption period as extended by the 60 days provided in 11 U.S.C. § 108(b). There is no doubt the Debtor had that right; the Debtor could have tendered the full redemption price within the 60 days provided by Section 108(b). That time period, however, expired on November 16, 2012, and the Debtor did not tender a lump sum to Scorpion within that time period. She did, however, file a plan proposing to redeem the property and stating that she would make payment in full. Several courts have raised the possibility that redemption could be accomplished by the Debtor taking affirmative steps such as filing a plan within the redemption period to pay the redemption price in full. *Id.* at 267.

By filing a plan within the barment period, Mr. Miller did what he was reqired to

-6-

do to set up a redemption under the Chapter 13 plan. Oakmont's argument that the "stay suspended the barment period" was presented to make it appear as if a change in the status of the parties occurred after dismissal. That is not the case as the parties still have the same rights in the property after the dismissal as they had while the case was pending. Oakmont's argument is a red herring used as a torjan horse to re-litigate issues already decided last year. If the dismissal is vacated, the plan continues and res judicata bars re-litigagion of the issues regarding the ability of a Debtor to redeem property subject to a tax deed.

**III.    Does the unpublished, post-petition order in the case of *In re: Edwards*, 14-51366-CRM , have an effect on the present case?**

After this Court confirmed Mr. Miller's case, Chief Judge Mullins issued an unpublished Order in the case of *In re: Edwards, 14-51366-CRM.* Oakmont cites this case in its response to the Motion to Vacate for the proposition that "…Debtor's plan purported to extend the time for Debtor to buy back Bouldercrest…" This is the same argument rejected by the Court in February of 2014 at the Stay Motion hearings. The *Edwards* Order is at odds with both Judge Hagenau's published opinion *Francis* and Judge Sacca's published opinion *In re: Drummer*, 457 B.R. 912 (Bankr. N.D. Ga. 2011). Judge Mullins opined that the sole method to redeem a tax deed is pursuant to 11 U.S.C. Sec. 108. The opinion contains some inaccuracies regarding Georgia law on tax deed redemptions. For example, the last paragraph on page 3 of the Order states: "For a **limited period of time** after a tax sale, the delinquent taxpayer has the

-7-

right to redeem…" citing O.C.G.A. 48-4-40 (emphasis added).  A further reading of O.C.G.A. 48-4-40 shows that the tax payer can also redeem "**At any time** after the sale until the right to redeem is foreclosed…" O.C.G.A. 48-4-40(2).  Georgia law has no time limitation on when redemption must take place. See, *Washington v. McKibbon Hotel Group, Inc.*, 284 Ga. 262 (2008).  In *Washington* the Georgia Supreme Court permitted redemption 25 years after issuance of a tax deed.  The Court made it clear that redemption had to be affirmatively cut off by the tax deed holder either by foreclosure (O.C.G.A. 48-4-45) or by four years of adverse possession (O.C.G.A. 48-4-48).

A more glaring defect of the *Edwards* Order is that it does not carefully examine state law as to the interest in the property which the taxpayer retains after the issuance of a tax deed.  The opinion simply concludes that a taxpayer only has a bare right of redemption with no other rights in the property.  However, as Judge Hagenau explained in her thorough analysis in *Francis*:

> Under Georgia law, a tax sale purchaser holds an inchoate or defeasable title to the property purchased. Brown Inv. Group, LLC v. Mayor & Aldermen of City of Savannah, 289 Ga. 67 (2011). The tax sale purchaser is not entitled to rent or possession during the period of redemption, Small v. Irving, 291 Ga. 316 (2012); the defendant in *fi fa* is - here, the Debtor. If Scorpion had come onto the Property, it would have been liable for trespass. Brown Inv. Group, 289 Ga. at 68. The Georgia Supreme Court has held that a tax deed purchaser has no more right to go on or use property purchased at a tax sale than a stranger to the title. Brown Inv. Group, 289 Ga. at 68. In Brown Inv. Group, the Supreme Court held the purchaser at a tax sale could not recover from the city for demolishing a building on property sold to the purchaser at a tax sale without notice to the purchaser. Only the debtor in *fi fa* has standing to sue for trespass until the right of redemption is terminated.
>
> Scorpion emphasizes it already holds legal title to the Property as a result

of the tax sale and therefore the Property is not property of the estate. Holding legal title is an important factor, but not the determinative factor as to whether the Property or any interest therein is property of the estate. For example, the holder of a security deed in Georgia holds legal title to the property. O.C.G.A. § 44-14-60. The interest retained by the grantor is an equitable title with a right of redemption, Citizens & Southern Bank v. Realty Savings & Trust Co., 167 Ga. 170 (1928), much like an owner after a tax sale. Courts consistently view property subject to a security deed as property of the estate and the legal title holder as the holder of a claim. A further example that holding legal title does not end the inquiry is 11 U.S.C. § 541(d). If Scorpion were a debtor, Section 541(d) provides that the Property itself would not be property of Scorpion's estate. This is further proof that bare legal title alone is not enough to eliminate the debtor's rights in the Property.

It is clear that a debtor in *fi fa* has far more rights in property than a bare right to redeem. The Debtor can use, sell and possess the property until barment is perfected. It is the tax deed holder who has almost rights in the property. It is limited to bare legal title. A tax deed holder cannot sell the property because a title insurance company will not acknowledge a tax deed as transferring title. A quiet title action resulting in an order must be obtained before a title insurance company will even consider insuring a sale from a tax deed holder. Even then, if notice was not properly served, or if a party was omitted from the quiet title action, the title insurance company would likely refuse to insure title to the property.

The *Edwards* Order is not only contrary to *Francis* and *Drummer,* but it also swims upstream against the vast majority of opinions across the country permitting debtors to pay tax deeds under a Chapter 13 plan. See, *In re: LaMont*, 740 F.3d 397 (7th Cir. 2014), *Salta Group v. McKinney*, 380 B.R. 515 (Bankr. C.D. Ill. 2008), *In re Stevens*, 374 B.R. 31 (Bankr.D.N.H.2007), *In re*

-9-

*Bates*, 270 B.R. 455, 466-67 (Bankr. N.D. Ill. 2001), *In re Romious*, 487 B.R. 883 (Bankr.N.D.Ill.2013) and *In re Hammond*, 420 B.R. 633 (Bankr.W.D.Pa.2009).

All of these cases involve state laws similar to Georgia's tax deed law. Generally, a county or city government issued a tax deed or certificate to a party like Oakmont. Next, the Debtor had a redemption period under his state's laws combined with rights of use and possession in the property. Finally, these Debtors also filed their cases prior to the expiration of the "barment" or similar time period. As a result, these Courts permitted payment of the redemption under the Chapter 13 plan.

Finally, the Court should not permit Oakmont use the Motion to Vacate as an opportunity to re-litigate an issue already decided last year in this case. Oakmont's argument is an attempt to confuse the simple issue of whether the Court should vacate the dismissal. Oakmont's claim is being paid in full under the plan. However, Oakmont is not satisfied with that. It seeks to walk away with a massive equity windfall of approximately $53,110.00 to the detriment of the unsecured creditors and the financial rehabilitation of Mr. Miller. With plan payments being current through January, Oakmont's claim being paid in full, and two offers to purchase the property from Mr. Miller, the Court should vacate the dismissal.

**CONCLUSION**

Based on the foregoing facts and citations of authority, Debtor respectfully

-10-

requests that court grant Debtor's "Motion to Reconsider and Vacate Order of Dismissal."

Respectfully requested, this 13th day of February 2015.

                                                      _____/s/_____
                                                      Mario "Marty" L. Adkins
                                                      Ga. Bar No.: 005393

3401 Norman Berry Drive, Suite 266
Atlanta, GA 30344
(404) 763-3623
madkinslaw@gmail.com

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served the parties below with a true copy of the foregoing, attached "Debtor's Brief in Support of Motion to Reconsider and Vacate Order of Dismissal" by U.S. Mail, First Class, with appropriate prepaid postage affixed, addressed as follows:

Adam Goodman
Ch. 13 Trustee
260 Peachtree St., NW
Ste. 200
Atlanta, GA 30303

Oakmont Holdings, LLC
c/o  E. Berk Sauls, Esq.
PO Box 1858
Flowery Branch, 30542

E. Berk Sauls, Esq.
6309 Compass Drive
Flowery Branch, Georgia 30542

Respectfully requested, 13th day of February 2015.

_____/s/_____
Mario "Marty" L. Adkins
Ga. Bar No.: 005393