UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| In RE: | : | |
| | : | Case No. 13-76000-MHM |
| ERIC T. MILLER, | : | Chapter 13 |
| Debtor | : | |

**RESPONSE TO DEBTOR'S BRIEF IN SUPPORT OF MOTION TO RECONSIDER AND VACATE DISMISSAL**

COMES NOW, OAKMONT HOLDINGS, LLC, ("Oakmont") the owner of 3606 Bouldercrest Rd, Ellenwood, GA, ("Bouldercrest"), and files this its Response to Debtor's Brief in Support of Motion to Reconsider and Vacate Dismissal and would show as follows:

**I. INTRODUCTION**

"Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55 (1979). Notwithstanding the clear importance of state law to the property interests of the parties, Debtor's counsel has, throughout this case, evidenced a fundamental misunderstanding of Georgia law regarding tax sales and redemption of real property from the same. The arguments put forth in Debtor's Brief in Support of Motion to Reconsider and Vacate Dismissal ("Debtor's Brief") are unfortunately no exception. Therefore, this response will begin by clarifying the parties rights and duties under state law and then address the arguments asserted in Debtor's Brief.

1

## II. ARGUMENT

A.      Rights of Debtor and Oakmont Under Georgia Law

Georgia law is clear that once a tax sale occurrs "the record owner of the real property at the time of the sale looses his interest in the subject property, instead only retaining a right to redeem the property for a limited period until the tax sale purchaser properly invoke[d] the state barment statutes." *Georgia Lien Services, Inc. v. Barrett*, 272 Ga. App. 656, 658 (2005) (citations omitted), see also *In re: Baker*, No. 08-83693-JEM, Doc.#33 at 4 (NBGA, Feb 24, 2009)(citing *Georgia Lien Services*). After the tax sale, O.C.G.A. § 48-4-40 grants the former property owner the opportunity to redeem the property by paying the redemption amount "(1) At any time within 12 months from the date of the sale; and (2) At any time after the sale until the right to redeem is foreclosed by the giving of the notice provided for in Code Section 48-4-45." As noted in Debtor's Brief, the Georgia courts have also held the statutorily granted right to redeem carries with it a right to retain use and possession of the property until the right to redeem is extinguished, although the tax sale purchaser is responsible for paying any subsequent property taxes that come due (See *Patterson v. Florida Realty & Finance Corp.* 212 Ga. 440 (1956) and *Iglesia Del Dios v. Downing* 321 Ga. App. 778 (2013)) or any assessments such as mandatory HOA fees that may come due on the property. (See *Croft v. Fairfield Plantation Prop. Owners,* 276 Ga. App. 311 (2005)). Put another way, after a tax sale a delinquent property owner possesses a statutorily granted option to repurchase the sold property, for a statutorily set price, for a period of time not less than one year and may continue to use said property until that option is extinguished.

O.C.G.A. § 48-4-45 specifies the method by which a tax sale purchasor may terminate or foreclose the previous property owner's statutorily granted option to repurchase the property sold at a tax sale. It is undisputed by the parties that prior to Debtor filing his petition Oakmont had taken all steps necessary under O.C.G.A. § 48-4-45 to terminate Debtor's right to Bouldercrest at 5:00 P.M. December 6, 2013. Thus at the time Debtor filed his petition, Oakmont was the owner of Bouldercrest and its obligation to sell Bouldercrest back to Debtor for a statutorily set price was about to expire.

B.      Response to Debtor's Statement of Facts

Oakmont does not dispute the timeline contained in the "Statement of Facts" section of Debtor's Brief. Oakmont does dispute Debtor's characterization of the redemption price for Bouldercrest as a "debt" or that there can be a "payoff" amount for said "debt". As is clear from the review of Georgia law in the previous section of this brief, Debtor owes Oakmont no debt, rather Oakmont, at the time Debtor filed this case, had a statutorily imposed obligation to sell Bouldercrest back to Debtor if Debtor timely repurchased the property by tendeing the redemption amount. Further, Oakmont did not receive any payment during the pendency of Debtor's case, therefore, if Debtor could still be considered to have a right to repurchase Bouldercrest from Oakmont the amount of that purchase price has not decreased since the filing of the case.

In addition, to Debtor's mischaracterization of the redemption price as a debt, Defendant's Brief suffers from additional factual deficiencies. As will be shown in greater detail below, the relationship of the parties was changed significantly by the dismissal of Debtor's bankruptcy, contrary to the assertion in Debtor's Brief that it has not changed. Debtor's brief containes no evidence to support its contention that Debtor has

3

received any actual offer to purchase Bouldercrest, and indeed at the hearing on this matter Debtor's counsel specifically acknowledged that the documents he referred to as offers at the hearing had not been executed and were not binding. Finally, Debtor's characterization of Oakmont's objection to Debtor's Motion to Vacate as an attempt to relitigate issues previously rejected by the Court is incorrect because even though Oakmont has used its objection to make the Court aware of recent case law development in the district, Oakmont submits that granting Debtor's Motion to Vacate in the way requested would be improper regardless of whether the court analyzed the right to redeem using the approach of either *In re Edwards*, 14-51366-CRM, Docket No. 35 (Bakr. N.D. Ga., 2014) or *Francis v. Scorpion Group, LLC*, 489 B.R. 262 (Bakr. N.D. Ga., 2013).

C.    Effect of Dismissal of Debtor's Case

Debtor's contention that the parties' position has not been changed by the dismissal of Debtor's bankruptcy case is contradicted by his own brief. As Debtor's Brief correctly points out, both *Francis* and *Edwards* stand for the proposition that a Debtor who files a bankruptcy petition after a tax deed purchaser has sent notice of termination of the right to redeem must redeem the real property by the later of the date specified in the notice or the time provided by 108(b)[1]. *Edwards* holds that this redemption must be done by paying the redemption price in full within the time required by Georgia law plus any extension provided by 108(b). *Francis* holds that a Debtor may pay the redemption amount over the course of a Chapter 13 plan provided that the plan is filed before the expiration of the redemption period, plus any extension provided by 108(b), *and is*

---

[1] Debtor's Brief states that at the January 29, 2015, hearing that Oakmont's counsel put forth the argument that the running of the redemption period was suspended during the pendency of Debtor's bankruptcy case. Rather, what was stated was that whether the Court adopted Judge Mullins's view expressed in *Edwards* or extended the time for Debtor to redeem consistent with Judge Hagenau's opinion in *Francis*, the ability for Debtor to redeem expired with the dismissal of his case.

4

*successfully completed*. See Debtor's Brief at 6 (emphasis added). At the risk of overstating the obvious, dismissal of Debtor's case constituted a failure to successfully complete the plan, therefore even under *Francis* debtor's time to exercise his right to repurchase Bouldercrest has expired.

In an attempt to bolster his claim that the position of the parties has not changed since the dismissal of Debtor's case, Debtort's Brief points to the fact that Debtor has not been served with Oakmont's quiet title action, filed in state court after the dismissal of Debtor's case, as evidence that Oakmont has not acted in reliance on the dismissal of Debtor's case. However, no quiet title action is required to divest Debtor of his right to redeem once the statutory time has expired. See *National Tax Funding v. Harpagon Co.*, 277 Ga. 41 (2003). In addition, Debtor's Brief neglects to mention that the reason Debtor has not been served is that, as mentioned at the January 29, 2015 hearing, Debtor has abandoned living at the Oakmont address and has failed to meet his obligation to update his address with this Court. Further, Debtor's Brief fails to mention that his counsel has, despite repeated requests, refused to provide a valid address for Debtor and has refused to accept service of the quiet title action on Debtor's behalf after suggesting that he would at the January 29, 2015, hearing on this matter. Therefore, Oakmont submits that any attempt of Debtor to rely upon the fact that he has thus far, and with the assistance of counsel, dodged service of the quiet title action is fundamentally disingenuous and also disregards the fact that Oakmont has had to incur filing and service costs associated with the quiet title action including the costs associated with bringing a motion to serve Debtor by publication.

D.     Effect of Granting Motion to Vacate Dismissal

5

Debtor's Brief and arguments of Debtor's counsel seem to suggest a belief that granting of the motion to vacate will return things to the *status quo ante* prior to the dismissal. However such a belief ignores authority that is both persuasive for and binding on this court.

The effect that vacating a dismissal has, and more importantly, does not have has been analyzed in at least two cases in this district. In both *In re Robinson*, 13-10244-WHD, Docket No. 54 (Bankr. N.D. Ga. Oct. 24, 2014) and *In re Parks*, 2005 WL 6491918 (Bankr. N.D. Ga. Feb. 4, 2005), the courts were confronted with similar underlying fact patterns. In both cases, a debtor filed a Chapter 13 case to save a home from foreclosure and the case was dismissed prior to completion of the Chapter 13 plan. Debtor's counsel in both cases filed a motion to vacate the dismissal but in both cases the debtor's home was foreclosed after the dismissal and before the entry of the order vacating the dismissal. In holding that the post dismissal / pre-reinstatement foreclosures were valid, both courts pointed out that while reinstatement of a case reimposes the automatic stay it does not do so retroactively to the time of the dismissal, therefore, actions taking place between the dismissal and entry of an order vacating a dismissal are not undone by reimposition of the stay. *Parks* at 2 and *Robinson* at 5-6, citing *Parks*.

The decisions in *Parks* and *Robinson* are in accord with, and according to *Parks* required by, the 11th Circuit's holding in *In re Lashley,* 825 F.2d 362 (11th Cir.1987), cert. denied, 484 U.S. 1075, 108 S.Ct. 1051, 98 L.Ed.2d 1013, reh'g denied, 485 U.S. 1016, 108 S.Ct. 1493, 99 L.Ed.2d 720 (1988). *Parks* at 6. In *Lashley*, the Debtors filed a bankruptcy petition to stop a foreclosure of their home. The case was dismissed and the debtors appealed. After the dismissal and before a hearing on a motion to reimpose the stay pending appeal, the debtors' home was sold at a foreclosure sale. The bankruptcy

6

court granted a thirty day stay pending appeal but denied a request to amend its order to show the stay as being retroactive to the date the case was dismissed. The district court denied the debtors' appeal and on appeal of the denial the 11th Circuit addressed the request to impose the bankruptcy stay retroactively. The court specifically noted that "[w]hile the Bankruptcy Code grants the bankruptcy court the power to retroactively *grant relief* from stay the court is unaware of any authority that grants the bankruptcy court the power to retroactively *impose* a stay." *Lashley* at 364 (cits. omitted, emphasis in original).

Debtor's Brief has cited no case or statute that would support any conclusion other than a conclusion that Debtor's right to redeem Oakmont expired, at the latest, when Debtor's case was dismissed. *Parks*, *Robinson*, and most importantly *Lashley* all make clear that reimposing the bankruptcy stay does not operate retroactively to undo or render void actions a creditor took to terminate a debtor's property rights while no stay was in effect, and there is nothing in those opinions to suggest that the fact a debtor's rights were terminated by expiration of a statutory time period rather than an affirmative action on behalf of a creditor should make the analysis any different. Debtor's Brief fails to provide any basis for deviation from those three cases and indeed fails to even address them. Based on the foregoing, Debtor's Motion to Vacate should be denied.

E.      Response to Analysis of *Edwards* and *Francis* in Debtor's Brief

As set forth above, Oakmont contends that whether the Court were to adopt the reasoning of *Edwards* or *Francis* the result of denying Debtor's Motion to Vacate wouldbe the same. However, Oakmont does believe it salient to address a few issues raised regarding the two decisions in Debtor's Brief.

7

Debtor's Brief contends that Judge Mullins's decision in *Edwards* "swims upstream against the vast majority of opinions across the country permitting debtors to pay tax deeds under a Chapter 13 plan." Debtor's Brief at 9. As a factual matter the assertion in Debtor's Brief is simply wrong[2]. In addition, the cases cited in Debtor's Brief are largely irrelevant to an analysis of what rights a Debtor has to redeem property in this district.

All but two of the cases cited by Debtor's Brief in support of its contention that *Edwards* is an outlier decision are cases arising under Illinois law. Illinois law conveys

---

[2] See *Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d 270 (8th Cir. 1983), cert. denied, 465 U.S. 1012. (noting that the automatic stay only prohibits affirmative acts and holding that nothing in the Bankruptcy Code granted the court the power to extend a debtor's time to redeem beyond the time afforded under 108(b), pointing out that if Congress had wished to grant courts such a power in the Chapter 13 context it could have explicitly done so as it did for family farming cases in the 1935 amendment to Sec. 203 of the Bankruptcy Act). See also *In re Byker*, 64 B.R. 640, 642 (Bankr.N.D.Iowa, 1986) (citing to *Johnson* in holding that once a notice of forefiture of the right to redemption was sent, as required by state law, "the rights of the parties are fixed and the Bankruptcy Code cannot toll the running of the redemption, subject only to the additional 60 days granted pursuant to 11 U.S.C. § 108(b)"). *In re Rudolph*, 166 B.R. 440 (D. Ariz., 1994) (holding that it was error to confirm a Chapter 13 plan which extended a debtor's ability to pay a redemption amount beyond the two years provided by state law, and noting that allowing a bankruptcy court to set its own timeline for a debtor to redeem property would render Sec. 108(a) a nullity). *In re Froehle*, 286 B.R. 94 (B.A.P. 8th Cir., 2002) (citing *Johnson* in holding that the automatic stay did not toll Iowa's stautorily granted tax redemption period). *In re Berger*, Case No.: 12-24891 (Bankr.N.J., 2012) (citing to *Johnson* in holding that the only statutory extension of the redemption period was that granted by Sec. 108(b) and no circumstances existed to warrant use of the Court's Sec. 105(a) equity power to extend the redemption period). See also *In re Canney*, 284 F.3d 362 (2nd Cir., 2002) (Second Circuit rejecting previous holdings of Vermont bankruptcy Courts and adopting the position of the Sixth, Seventh and Eigth Circuits that the indefinite stay of Sec. 362(a) is superseded by the timing provisions of Sec. 108(b)).

8

no deed to a tax sale purchaser but "rather a certificate of purchase which can be exchanged for a deed only if the property is not redeemed" (*In re: Bates*, 270 B.R. 455 (Bankr. N.D. Ill. 2001) at 459 [cits. omitted]).  In other words, the delinquent tax payer must pay the tax certificate holder or else loose title to his property.  Oakmont agrees with the *Francis* decision that the purchaser at the tax sale under a stautory scheme such as Illinois is like the holder of a non-recourse mortgage, and if Georgia law were the same as Illinois law then the decision reached in *Francis* would be correct.  However, under Georgia law the tax deed purchaser receives title to the subject property and redemption requires repurchase of the property from the tax deed holder who then quitclaims the property back to the original owner.  Therefore, given the significant difference between the state statutory schemes in Georgia and Illinois, the Illinois cases cited in Debtor's Brief are of limited value in this district.

      The remaining two cases cited in Debtor's Brief are likewise distinguisable from both *Edwards* and the instant case.  The tax deed purchaser in *In re Hammond*, 420 B.R. 633 (Bankr. W.D. Pa. 2009) did not object to the debtor paying the redemption price for the property through the Chapter 13 plan, therefore any decision regarding the tax deed purchaser's rights in that case are effectively dicta.  State law at issue in *In re Stevens*, 374 B.R. 31 (Bankr. D. N.H. 2007) limited the interest of a town in any property it took for non-payment of property taxes, such as the debtor's, to an amount equal to the redemption price, therefore, the court held that the town effectively had nothing more than a lien on the property.  As can be seen, neither *Hammond* nor *Stevens* provide any substantive guidance regarding how property interests created by Georgia law should be treated.

      Oakmont submits that both Debtor's Brief and the *Francis* decision on which it relies both ultimately fail to follow *Butner*'s admonition, which bares restating,

9

"[p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55 (1979). The court in *Francis* failed to recognize that under Georgia law a redemption of property of a tax sale is not the payment of a debt, the debtor owes the tax deed purchaser nothing, rather redemption is the repurchase of a property and to treat it otherwise is to ignore *Butner*'s admonition to defer to state law in defining property interests. This was recognized by the the court in *Edwards*, and accordingly, it ruled that a debtor could not use a bankruptcy plan to extend the time to repurchase property which the debtor lost due to his or her failure to pay property taxes.

## CONCLUSION

Oakmont respectfully submits that Debtor's Chapter 13 plan was contrary to both Georgia law and the Supreme Court's ruling in *Butner* and that recent case law in this district supports that conclusion. Notwithstanding the dispute between Debtor and Oakmont as to whether the *Edwards* or *Francis* decision represents the better synthesis of state law and bankruptcy law, Debtor's right to redeem or repurchase Bouldercrest from Oakmont expired no later than when Debtor's case was dismissed. No authority has been cited in Debtor's Brief to support the notion that the Court can somehow undo the expiration of the redemption period caused by the dismissal of Debtor's case and both persuasive and controlling precedent mitigate against the retroactive imposition of the bankruptcy stay that Debtor seeks. Therefore, Debtor's Motion to Reconsider and Vacate the Dismissal should be denied.

Respectfully submitted this _23rd___ day of February, 2015.

/s/ E. Berk Sauls
E. Berk Sauls, Esq.
Georgia State Bar No. 627059
P.O. Box 1858
Flowery Branch, Georgia 30542
Tel. (404) 372-6702
ebsauls@gmail.com

11

**CERTIFICATE OF SERVICE**

  I, E. Berk Sauls, certify that on the _23rd_ day of February, 2015, I caused a copy of the Response to Debtor's Brief in Support of Motion to Reconsider and Vacate Dismissal to be filed in this proceeding by electronic means and to be served by depositing a copy of the same in the United States Mail in a properly addressed envelope with adequate postage thereon to the said parties as follows:

Mario "Marty" L. Atkins
3401 Norman Berry Dr.
 Suite 226
Atlanta, GA 30344

Eric T Miller
3606 Bouldercrest Rd.
Ellenwood, GA 30294

Adam M. Goodman
Chapter 13 Trustee
Suite 200
260 Peachtree Street
Atlanta, GA 30303

This _23rd___ day of February, 2015.

                                        /s/ E. Berk Sauls
                                        E. Berk Sauls, Esq.
                                        Georgia State Bar No. 627059
                                        P.O. Box 1858
                                        Flowery Branch, Georgia 30542
                                        Tel. (404) 372-6702
                                        ebsauls@gmail.com